## MARYLAND CASUALTY CO. v. GLASSELL-TAYLOR CO. et al.

### No. 1621.

District Court, W. D. Louisiana, Shreveport Division.

Dec. 1, 1945.

Rosen, Kammer, Wolff, Hopkins & Burke, Alfred C. Kammer, and Louis L. Rosen, all of New Orleans, La., for plaintiff.

Thos. F. Porter, of Lake Charles, La., for defendants.

DAWKINS, District Judge.

Plaintiff seeks to impound and subject to its claims for liabilities growing out of its suretyship on two bonds, a check or its proceeds in favor of certain contractors or their assigns, representing an appropriation by Congress to cover losses on the first of

the two projects. The first contracts were with the United States for work done at Karnack, Tex., and will be referred to as the Texas Project; and the second with a private firm in the State of Louisiana and will be designated as the Louisiana Project.

In Texas the contractors were Glassell-Taylor Company (composed of Ashton Glassell and Jay W. Taylor) and Robinson and Young (composed of Julio B. Robinson and H. Martyn Young.) The bill alleges that these firms as "associated contractors" and their individual members "entered into certain written obligations in the form of bonds" to secure the performance of the contracts with the United States, dated March 27, 1942, in the sums of $99,637.04 and $498,185.18 respectively, and that in connection therewith the contractors signed "an indemnifying agreement and assignment", the protection clauses of which are quoted in the bill, and admitted by the defendants, as follows:

"* * * The undersigned will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all liability for damages, loss, costs, charges and expenses of whatever kind or nature (including counsel and attorney's fees,) which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond(s) herein applied for, or any and all other bonds executed for us at our instance and request; and will pay over, reimburse and make good to the Company, its successors and assigns, all money which the Company or its representatives shall pay, or cause to be paid, or become liable to pay, by reason of the execution of any such instruments, or in connection with any litigation, investigation or other matters connected therewith, such payment to be made to the Company as soon as it shall have become liable therefor, whether the Company shall have paid out such sum, or any part thereof, or not."

"In the event of claim or default under the bond(s) herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bond(s), or in the event of claim or default in connection with any other former or subsequent bonds executed for us or at our instance and request all payments due or to become due under the contract covered by the bond(s) herein applied for, shall be paid to the Company—

and this covenant shall operate as an assignment thereof and the residue, if any, after reimbursing the Company, as aforesaid, shall be paid to the undersigned after all liability of the Company has ceased to exist under the said bond(s), and the Company shall at its option be subrogated to all rights, properties and interest of the undersigned in said contract or contracts. The undersigned hereby also agree that in the event of any default on the part of the undersigned under said contract, or in the event a claim of any description is filed against such bond(s), the Company is authorized to inspect the books, records, accounts, etc., of the undersigned and the undersigned will upon demand of the Company turn over for inspection all of the books, records and accounts pertaining to said contract or to the financial condition of the undersigned."

Further, that one William H. Smith had sued the contractors and plaintiff as surety in the United States District Court for the Eastern District of Texas for the sum of $5,045.60 on a claim arising out of said contracts and had recovered judgment in the sum of $1,469.43, but that the same had been set aside on appeal, and "remanded to the District Court for further proceedings, where it is now pending."

The bill also alleged that an assignment had been made by the said contractors to the Commerical National Bank in Shreveport of certain rights under the Texas contracts, but the bank has been eliminated from the proceedings here on the showing that it no longer asserts any claim.

The bill of complaint further alleges that "Glassell-Taylor and Robinson, doing business as Glassell-Taylor, and Robinson and Young of Shreveport, Louisiana, on the 2d day of July, 1943, entered into a contract in writing with John W. Harris Associates, Inc. of Louisiana" for the furnishing of labor and materials and the doing of certain work on "a housing project" in the state of Louisiana, near Lake Charles, which was the Louisiana Project; and on the 14th day of August, 1943, "plaintiff executed a certain bond, as surety for said defendants, Ashton Glassell, Jay W. Taylor and Julio B. Robinson, doing business as Glassell-Taylor and Robinson and Young, as principal, in favor" of said John W. Harris Associates, Inc., in the sum of $595,-000, "to secure the obligee against any loss or damage directly arising by reason of

the failure of the principal to faithfully perform said contract" (of July 2, 1943.)

Further, that the bond in this instance "was executed by plaintiff upon the written application of *Glassell-Taylor and Robinson*" and in connection therewith, *"said partnership* executed * * * an indemnifying agreement" (emphasis by the writer), the indemnifying clauses being as follows:

" * * * The undersigned will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all liability for damages, loss, costs, charges and expenses of whatever kind or nature (including counsel and attorney's fees), which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond(s) herein applied for, or any and all other bonds executed for us or at our instance and request; and will pay over, reimburse and make good to the Company, its successors and assigns, all money which the Company or its representatives shall pay, or cause to be paid, or become liable to pay, by reason of the execution of any such instruments, or in connection with any litigation, investigation or other matters connected therewith, such payments to be made to the Company as soon as it shall have become liable therefor, whether the Company shall have paid out such sum, or any part thereof, or not. That in any accounting which may be had between the undersigned and the Company, the Company shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether, such liability, necessity or expediency existed or not, and vouchers or other evidence of such disbursements shall be taken as conclusive evidence against the undersigned of the fact and extent of the undersigned's liability to the Company."

" * * * In the event that the Company is required by any State Insurance Department to reserve from its assets an amount to cover any contingent claim or claims under the bond(s) herein applied for, by reason of default, abandonment of contract, liens filed, dispute with the owner or ob-

ligee, or for any other reason whatsoever, the undersigned jointly and severally, hereby covenant and agree to immediately on demand deposit with the Company, in current funds, an amount sufficient to cover such contingent claim or claims, as a trust fund or collateral security, to be held by the Company as indemnity on the bond(s) herein applied for, in addition to the indemnity afforded by this instrument; and if the Company is required to enforce performance of this covenant by action at law or in equity, the costs, charges and expenses, including counsel or attorney's fees, which it may hereby incur, shall be included in such action and paid by the undersigned."

Further, that in the application for said last mentioned bond, "said defendants Glassell-Taylor and Robinson executed" as a part "thereof an agreement to deposit with plaintiff, in current funds an amount sufficient to cover any contingent claim or claims under the bond as a trust fund or collateral security," the provisions of which were quoted in preceding paragraph.

Further, that on or about February 29, 1944, "John W. Harris Associates, Inc. * * * claiming that defendant Glassell-Taylor and Robinson was in default * * * ousted said partnership from the work * * * and took possession."

Further, that certain suits had been filed and were pending, "none of which has been tried". Then, follows a list of some four suits, the first of which was by John W. Harris Associates, Inc., in the United States District Court for the Eastern District of Louisiana, and the remaining three in the State Court of Calcasieu Parish. It is further alleged that "a number of other claims have been asserted against plaintiff herein", all of which arise out of the Louisiana Project.

Plaintiff further alleges that in compliance with the laws of Maryland, the state of its creation, it has "set up a reserve of $1,500" pending the litigation at Karnack, or in the Eastern District of Texas, and a further "reserve of $595,000 from : , assets by reason of the pending litigation" growing out of the Louisiana Project.

Further, that at the termination of the Texas Project, the contractors had "made claims against the United States for certain sums by reason of a change of orders * * * which claim was denied and refused, * * *" and that thereafter Congress had appropriated the sum of $221,275.-79 to "pay Glassell-Taylor Company and

Robinson and Young in full satisfaction of their claims against the United States" for the Texas Project.

Petitioners finally allege that by virtue of the provisions in the indemnifying agreement, executed in connection with the Texas Project, "plaintiff is entitled to receive and hold any and all funds to be paid by the United States on the Texas Project" and that by reason of the indemnifying agreement executed in connection with the Louisiana Project it is also entitled to have the defendant, Glassell-Taylor and Robinson "perform the agreement by placing in its hands as collateral any and all of said funds to be paid by the United States to or for the account of said Glassell-Taylor Company and Robinson and Young * * *, to be held as a trust fund or collateral security as indemnity on the bond executed by it as surety in connection with the Louisiana Project."

There is an additional omnibus article in the complaint as follows: "Plaintiff further avers that it is entitled by exoneration and subrogation to the rights of any and all obligees, sub-contractors and materialmen to whom it may be held liable under said bond aforesaid and to have paid to it in due course any and all funds to be paid by the United States Government to or for the account of said Glassell-Taylor Company and Robinson and Young."

The bill then proceeds to say that plaintiff is informed that a check ha· been executed by the United States, and "is about to be paid to Glassell-Taylor Company and Robinson and Young, in the sum of $221,-275.79 * * * or to said Commercial National Bank in Shreveport as the assignee * * * and for which reason a writ of injunction should issue to prevent paying out or disbursing said funds in any manner" pending determination of the rights of the parties hereto.

The bill prayed that matters be determined under the terms of the agreements alleged upon and that the funds represented by the aforesaid check be deposited in the registry of the Court to abide the judgment herein.

It appearing at the hearing on October 15, 1945, on the application for preliminary injunction, that the Commercial National Bank in Shreveport was no longer asserting any claim to the check or funds, a decree was signed dismissing it from the case upon the condition that when and if the check was received, it should be "returned * * * to the sender."

Attorneys for H. Martyn Young filed at the hearing a motion for bill of particulars, as to whether this defendant "was a party to the so-called Louisiana Project" and whether "the bond alleged to have been executed by plaintiff as surety on the Louisiana job was executed by your mover, either individually or as a member of the partnership of Robinson and Young". He also filed a motion to dismiss the bill on the ground that it disclosed "no cause or right of action" as to him.

A joint answer was filed by Glassell-Taylor Company (Ashton Glassell, Jay W. Taylor, Robinson and Young, and Julio B. Robinson) and Glassell-Taylor and Robinson. It first plead prematurity, failure to state grounds for relief and especially for a writ of injunction. It then proceeded to answer specifically each paragraph of the bill of complaint.

It admitted the execution of the contract and bond for the Texas Project as well as the application for the bond and indemnifying agreement as alleged. It also alleged that settlement had been made with the Commercial National Bank in Shreveport. It further admitted entering into the Louisiana contract as alleged on July 2, 1943, but that "prior to August 14, 1943, H. Martyn Young, with the consent of all parties interested, withdrew from the partnership of Robinson and Young, and thus disposed of whatever interest he might have had in the said contract with John W. Harris Associates, Inc."

Further, that after the withdrawal of Young, "Ashton Glassell, Jay W. Taylor and Julio B. Robinson formed an ordinary partnership under the name of Glassell-Taylor and Robinson, for the purpose of carrying out the terms" of the Louisiana Project; that plaintiff, Maryland Casualty Co., had "legal knowledge" of Young's withdrawal prior to the date of the bond so executed and that the bond, application and indemnifying agreement "were all executed by the ordinary partnership of Glassell-Taylor and Robinson."

These defendants further admitted the terms of the documents as alleged, but denied that "they were obligated to exonerate plaintiff to the full extent of any loss which might occur out of any assets other than

those belonging to the partnership". They further denied that "plaintiff has suffered any loss under said bonds".

They further admitted that Harris Associates, Inc., had declared the Louisiana contract in default and taken possession, and that the suits on the Louisiana bond had been filed as alleged; but denied the allegations of the bill as to the setting up of reserves.

Defendants also admitted passage of the Act by Congress as alleged but averred that "long prior to the passage of said bill all claims which said defendants had against the United States under the said contract had been fully, finally and legally satisfied." They denied that any right to the funds appropriated by Congress were assigned to meet obligations under the Louisiana Project or that they agreed to deposit any of these funds to secure plaintiff thereunder, but admitted plaintiff's subrogation to the rights of defendants for sums due under the Louisiana contract.

Defendants further denied that there was any basis for an injunction or equitable relief under the facts and law of the case as alleged and prayed that the injunction be denied with reservation of their right to sue for damages.

The matter was submitted upon the bill of complaint, motions and answer, with accompanying affidavits, as to whether a temporary injunction should issue. Plaintiff was granted permission to file certain copies of the bond, applications therefor and indemnifying agreements. It filed certified copy of the bond for the larger amount given in connection with the Texas Project.

Attached to the answer of H. Martyn Young were certified copies of a statement signed by J. B. Robinson, Ashton Glassell and Jay W. Taylor, dated, "August ———, 1943" but which was recorded on August 12th of said year, in which it was recited that, while the firm of Glassell-Taylor Company and Robinson and Young had (about July 2, 1943) entered into the Louisiana contract "with John W. Harris Associates, Inc. of Louisiana, Young desired to be relieved of any liability on the project and entered into a written agreement with J. B. Robinson, Sr., to take over his one-fourth interest and assume all liabilities", which was agreed to and the three remaining individuals, *Glassell, Taylor and Robinson stipulated that it was "agreeable * * ** *to make this an equal partnership of one-third each".* (Emphasis by the writer.)

Defendant Young also attached certified copy of an agreement signed by Young, Robinson, Glassell and Taylor, and John W. Harris, Associates, Inc., reciting that, although the contract of July 2, 1943, had been entered into between Glassell-Taylor Company and Robinson and Young, "H. Martyn Young, Jr. * * * desires to be relieved of all and any obligations assumed by him as a member of" Robinson and Young. It was agreed that Young should withdraw and he accordingly assigned "unto J. B. Robinson any right, title, interest or benefit that he has or might be entitled to under the said contract" between Harris Associates, Inc., and the two partnerships that had signed it; and Robinson assumed "any and all obligations of the said firm of Robinson and Young under the terms of said contract, binding himself, his heirs and assigns to all the terms and conditions thereof".

It was further agreed between the parties that Robinson should "be substituted as one of the 'sub-contractors' for the firm of Robinson and Young". The said agreement also contained the stipulation:

"It is distinctly understood that hereafter no purchase, sale, or any other contract, agreement and/or obligation shall be made, entered into or incurred in the name or names of the original 'Subcontractors', but all such purchases, sales, contracts and/or agreements shall be in the name of Glassell & Taylor and J. B. Robinson.

"And the 'General Contractor', John W. Harris Associates, Inc., herein acting by and through Robert McLean, duly authorized, has taken cognizance of this assignment and agreement, agreeing that the said H. M. Young, Jr. shall be relieved of any of the obligations which he might have assumed under the terms of said contract and shall not look to him or to the firm of Robinson & Young, but solely to J. B. Robinson and Glassell & Taylor for compliance with the terms of said contract.

"And also appeared Glassell & Taylor, acting by and through Ashton Glassell, duly authorized, who declared that they join in this agreement releasing and relieving the said H. M. Young, Jr. from any and all obligations assumed and incurred by him as a member of the firm of Robinson & Young, and substituting J. B. Robinson, individually, in lieu and instead of the firm

of Robinson & Young as one of their co-subcontractors".

The certified copy of the bond, subsequently filed in evidence herein by plaintiff for the Texas Project disclosed the following: "That we, Ashton Glassell, an individual, and Jay W. Taylor, an individual, trading as Glassell Taylor Company of Shreveport, Louisiana, and Julio Buel Robinson, an individual, and H. Martyn Young, an individual, trading as Robinson and Young of Baton Rouge, Louisiana, (Glassell Taylor Company and Robinson & Young, Associated Contractors) as Principal, and Maryland Casualty Company, a corporation created by and existing under the Laws of the State of Maryland, of Baltimore, Maryland, herein represented by Durel Black, attorney-in-fact, as surety, are held and firmly bound unto the United States of America. * * *"

It was signed by Ashton Glassell, Jay W. Taylor, Julio B. Robinson and H. Martyn Young (the names of the firms as such were not signed), by the Government, and by plaintiff, Maryland Casualty Company.

The question presented is as to whether this bond, the application therefor and indemnifying agreement executed in connection with the Texas Project gave the plaintiff any claim against the $221,275.79, appropriated by Congress, for its liabilities under the Louisiana contract.

There is also the further issue as to whether similar documents, executed in connection with the Louisiana contract, give plaintiff the right to hold the interests of the partners of Glassell, Taylor and Robinson in this said fund. While it is true that defendants, Ashton Glassell, Jay W. Taylor, Julio B. Robinson and H. Martyn Young denied the allegations of the complaint to the effect that they had executed the bonds under the Texas contract, as individuals, and claimed that they had done so through the partnerships of Glassell-Taylor Company and Robinson and Young, only the larger bond (the only one which was produced) as above quoted showed that it was signed by all four in their individual names and not by the firms. However, plaintiff does not allege that the obligations of said bonds were made by the individuals, but in article 6 of the petition it is stated that they were by "defendants Glassell-Taylor Company and Robinson and Young * * * and in connection with said obligation, said defendants executed an in-demnifying agreement and assignment, the indemnifying clauses being as follows", and which were quoted earlier in this opinion. These allegations were admitted by defendants. Thus, while the bond was executed by the individual members of the partnership, the only evidence before the court consisting of the allegations of the bill and averments of the answer show that the stipulations in the applications for bonds and indemnifying agreements were by the partnerships and not by the individuals. Had they been by the individuals, as was the bond, then there would seem to be no reason why they could not have pledged or assigned sums received by them for the Texas contract to protect any obligation assumed to plaintiff as surety under a subsequent bond by them as individuals in connection with another contract such as the one entered into for the Louisiana Project. Again, had the application and indemnifying agreement made in connection with the Louisiana Project been executed by the same firms in the same relations as was done under the Texas contract, they could unquestionably have bound themselves with respect to any rights under prior contracts, such as the one in Texas. However, while the contract in Louisiana was made by the same firms, by consent of all concerned, H. Martyn Young was permitted to withdraw and assign his interests in the Louisiana contract to Robinson, in an instrument filed for record in the mortgage records of Calcasieu Parish on July 29, 1943. According to the bill of complaint (Article XI) the bond in the Louisiana Project was executed on August 14, 1945 "upon the application of Glassell-Taylor and Robinson"; as was also the indemnifying agreement made in connection therewith. It thus appears that the stipulations quoted and relied upon by plaintiff in connection with the Louisiana contract were with a distinct and new firm, composed of Glassell-Taylor and the individual, Robinson. Whatever was due, either by its terms, or by recognition of Congress, under the Texas contract, was to the firm entities, parties thereto, to-wit, Glassell-Taylor Co. and Robinson and Young, "associated contractors". In its bill of complaint, plaintiff named specifically the firm of "Glassell-Taylor and Robinson, as a partnership, composed of Ashton Glassell, Jay W. Taylor and Julio B. Robinson", which is admitted in the answer. It can not therefore be assumed that even the partnership of Glassell-Taylor & Company continued as

724

a distinct juridical entity in the sense that it appeared in the Texas agreements.

Partnerships of this kind fall within the class defined by Article 2835 of the Louisiana Civil Code as "particular partnerships are such as are formed for any business not of a commercial nature." They are distinct from the partners who compose them, as well as any other partnerships formed by the same persons with other and different partners. Toelke v. Toelke, 153 La. 697, 96 So. 536. The interest of the partner is residuary and can be made to respond to individual debts only after liquidation and satisfaction of partnership creditors. Ib. See also Atkinson & Co. v. Hibernia Nat. Bank in N.O., 186 La. 1074, 173 So. 768. It follows, that since the rights of the plaintiff, if any, to this fund, under the obligations of the bonds and indemnifying agreements, made in connection with the Texas Project, were with partnerships different from those dealt with in Louisiana, it can not be said that they apply to the Louisiana undertaking.

When we come to consider the agreements made under the Louisiana Project, we are met with the same situation, i. e., the promises were made by a different partnership, Glassell, Taylor and Robinson, which, as such, had no interest in the Texas Project.

It must be borne in mind that this is not an attachment or garnishment proceeding in which it is sought to hold any right or interest of the individual partners in either undertaking. Plaintiff simply seeks to have the check of the Government or its proceeds held to be applied to the satisfaction of any liability, which it may have to discharge, under either or both the Texas and Louisiana contracts.

With respect to the Smith suit it appears to be conceded that the maximum liability under the Texas contract can not exceed $6,000. Plaintiff is entitled to have that amount deposited in the registry of the court, to protect it against this action in the Eastern District of Texas. Without finding it necessary to go into the legal niceties discussed by either side, I am of the view that the money appropriated by Congress was to satisfy the just claims of the original partnerships under the Texas contracts, and to the extent that the plaintiff assumed liabilities in its bonds for that project, it is entitled to be protected by the funds thus provided. The preliminary writ

should be granted, with the right to have the same dissolved upon payment into the registry of this court of the sum of $6,000 to await the final outcome of the Smith suit in courts for the Eastern District of Texas.

Proper decree should be presented.